

OFFICE OF THE ATTORNEY GENERAL OF TEXAS

AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5002
Re: Levying of inheritance tax
upon one-half community in-
terest of donor of irrevoc-
able trust for a fixed term
where donor retained limit-
ed life interest in income
and contingent reversionary
interest in corpus.

From your request for opinion, dated December 4,
1942, and its accompanying documents we summarize the follow-
ing facts as the basis for this opinion:

On January 28, 1921, the donors, Guy Sumpter and
Nannie Sumpter, his wife, created an irrevocable trust on the
following terms:

(a) The trust was to continue for twenty-five
years, provided, however, that the prior death of all per-
sons entitled to take thereunder would terminate the trust
and result in a distribution of the corpus to the respective
heirs of the donors in accordance with the statutes of des-
cent and distribution.

(b) During the life of the donors, or the survivor
thereof, and limited by the term of the trust, income there-
from was to be paid to such donor or donors. In the event
that both donors died prior to the termination of the trust,
income therefrom was to be distributed in seven shares to a
named lineal descendant of the donors and in one share each
to nine named collateral descendants, with the proviso that
the death of any named beneficiary without a surviving child
or children would, with an immaterial exception, result in
the division of such beneficiary's share among the surviving

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION

beneficiaries, while the death of any named beneficiary with a surviving child or children would, with an immaterial exception, vest such beneficiary's share in the surviving child or children. A further provision of the trust indenture made explicit the intention of the donors that only the named beneficiaries or their surviving children should share in the benefits of the trust.

(c) Upon the expiration of the term of the trust and subject to the contingency noted in (a) above, seven shares of the corpus were to be distributed to the named lineal descendant and one equal share was to go to each of the surviving named collateral descendants or their surviving children.

(d) No beneficiary who should contest or seek to set aside or annul the trust instrument was to share in the income or corpus either as a beneficiary of the trust or, under the contingency noted in (a) above, as an heir of the donors.

At the time of the creation of the trust, the donor, Guy Sumpter, was sixty-seven years old and had a life expectancy of ten years under the American Experience Mortality Tables, while the donor, Nannie Sumpter, was sixty-one years old and had an expectancy of approximately thirteen and one-half years. Mr. Sumpter died in 1930 at the age of seventy-six, and his wife died in 1942 at the age of eighty-two.

You ask "whether or not we should include Mrs. Nannie Sumpter's one-half community interest in this trust as a portion of her estate, for inheritance tax purposes."

The relevant portions of our inheritance tax statute (Article 7117, V. A. C. S.) are as follows:

"All property within the jurisdiction of this State, real or personal, corporate or incorporate, and any interest therein. . . . which shall pass absolutely or in trust by will . . . or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, shall, upon passing to or for the use of any person, corporation, or association, be subject to a tax. . . ." (Emphasis ours)

Honorable George H. Sheppard, page 3

Our principal question is whether the instant trust was "made or intended to take effect in possession or enjoyment after the death of the grantor (s) or donor(s)."

This clause has but seldom been construed by our courts, and, although identical clauses in the laws of other states have been the subject of much judicial interpretation, we have found no instance in which an appellate court in any jurisdiction has considered the application of this clause to a trust possessing the precise characteristics of the Sumpter trust.

The courts of this and other states have consistently held that inheritance taxes are taxes on the "right of succession" to the property involved. State v. Hogg, 123 Tex. 568, 72 S. W. (2d) 593 (1934). As was said by Justice Blair in the leading case of Bethea v. Sheppard, 143 S.W. (2d) 997 (1940) (error refused):

"We do not regard as necessary a lengthy discussion of the distinction recognized by the authorities between the federal estate tax and the inheritance or succession tax levied by the various states. Suffice it to say that the federal estate tax is imposed upon the right of grantor or transferor to transfer property, and that the inheritance or succession tax by the State is imposed upon the right to receive or succeed to the possession or enjoyment of property. . . ." (Emphasis added)

Thus under our statute the right to receive or succeed to the possession or enjoyment of property is taxable both when such possession or enjoyment is received under a transfer "made" to take effect after the death of the donor and when such possession or enjoyment is received under a transfer "intended" to have such effect.

That the words "made" and "intended", as used in Article 7117, do not in all cases denote the same type of transfer is clear. While most if not all transfers "made" to take effect after the death of the grantor are "intended" to have such an effect, not all transfers "intended" to have this effect are "made" in such a way as to accomplish it. Regardless of whether both elements are present in a given transfer or whether the element of intent alone is present, the

right to receive the possession or enjoyment of property under such a transfer is taxable. Transfers of the former type are such that they must necessarily take effect after the death of the grantor, as where A reserves a life estate in property transferred by way of remainder to B, or, as in the Bethea case, supra, where A provides that property is to be conveyed to B eight years after A's death. In such cases the transfer is "made" in such a way that possession and enjoyment can only pass upon the death of the grantor or at a time determined by his death. On the other hand, transfers of the latter type are those which the grantor "intends" to take effect after his death, but which may not necessarily do so, as where A, believing that he cannot live more than ten years, reserves an estate for twelve years and transfers the remainder to B. Here the intent to postpone the vesting of possession and enjoyment in B until after the death of the grantor is apparent, but, unlike the preceding situation, the transfer is not "made" in such a way that the intended result must necessarily follow, since A's unexpected longevity conceivably could thwart his intent. Both types of transfer are testamentary in character, and, if clauses of the type under consideration are to fulfill their purpose of preventing inter vivos transactions which are testamentary in character from being used as vehicles for tax evasion, both types of transfer must be, as they were, included within the tax statute. As was said by Mr. Justice Lamar in Keeney v. New York, 222 U.S. 525, 536, in construing an almost identical provision in the New York Transfer Tax Law:

> "It imposes a tax on transfers by descent, or will, which take effect at the death of the testator; and then a tax upon transfers made in contemplation of death. It was but logical to take the next step, and tax transfers intended to take effect at or after the death of the grantor -- even though that event was not actually impending when the deed was signed. . . ."

It will be noticed that after the creation of the Sumpter trust the donors thereof were still possessed of two interests in the trust property: (1) An interest in the income of the trust measured by the lives of the donors or by a period of twenty-five years, whichever proved to be shorter, and (2) a reversionary interest contingent upon the donors, or either of them, surviving, during the term of the trust, all of those named beneficiaries and their children who did

not contest the trust instrument. Coupled with these reservations is the fact that this trust was created at a time when the longest expectation of life possessed by either of the donors was but slightly more than half the term of the trust.

As was said in In Re Cochrane's Estate, 190 N.Y. Supp. 895, 902 (1921), with reference to the type of clause here under consideration:

"Each case must be determined by its own peculiar facts. The aim of the law is to reach property, where by reasonable deduction the donor intended to retain its enjoyment."

An analysis of the Sumpter trust reveals, we feel, that under the terms of the trust and the circumstances of its formation, it is clearly comprehended within the clause under consideration. While the fact that the term of the trust exceeds the life expectancies of the donors might not, if standing alone, be sufficient to justify this conclusion (see Shukert v. Allen, 273 U.S. 545, 47 Sup. Ct. 461) this fact may well be coupled with other circumstances indicating that the donors did not intend to relinquish their enjoyment of the property until their deaths. Thus in the cases of In re Schmidlapp, 236 N.Y. 278, 140 N. E. 697 (1923), and Stark v. United States, 14 F. (2d) 616 (1926), involving the same trust, the fact that a donor aged sixty-five created a trust to last for eight years was added to the facts that he reserved a life interest in the income during the life of the trust and reserved certain powers of alteration and modification to obtain the conclusion that the transfer was intended to take effect in possession or enjoyment after the donor's death.

In the instant trust the donors likewise reserved an interest in the income for so long as they should live during the term of the trust. Had they reserved an unlimited life estate, the transfer clearly would have been taxable, Bethea v. Sheppard, supra, 49 A.L.R. 874, 878. A consideration of this reservation and the brief life expectancy of the donors can only reveal that by reserving an estate for so long as they should live during the twenty-five years of the trust, they in fact, if not in name, reserved an unlimited life estate. To treat this reservation other than as if it were an unlimited life estate is to conceal substance with form. In neither the Schmidlapp nor the Stark case, supra, was the remote possibility of the donor surviving the term of the trust

Honorable George H. Sheppard, page 6

allowed to militate against the conclusion of the courts, although this argument was strenuously urged by counsel. If such a possibility were to be given controlling effect and were allowed to relieve a trust from taxation -- as if in the instant trust the remote possibility of the donors living longer than twenty-five years from the creation of the trust were allowed to remove this trust from the "made or intended to take effect after death" clause -- an unequalled loophole for tax evasion would be created, for each and every trust in which a life estate was reserved to the donor could be rendered tax immune by the simple expedient of limiting such estate upon a term longer than the expectancy of the donor.

Moreover, in addition to their interest in the income, the donors of the Sumpter trust retained a reversionary interest contingent upon their surviving, during the term of the trust, those named beneficiaries and their children who were entitled to take under the trust. The only provision for the death of the named beneficiaries and their children is contained in Section XVI of the trust indenture as follows:

"If at any time all beneficiaries entitled to take hereunder shall have deceased, or have ceased to be entitled to the benefits hereof by contesting this instrument, the Trust shall terminate, and after payment of all costs, expenses and charges thereof, the Trustee shall distribute the property of the Trust Fund one-half to the respective lawful heirs of each of the donors, per stirpes in accordance with the Statutes of the State of Texas with reference to Descent and Distribution. . . ." (Emphasis added)

It is plain that in speaking of "all beneficiaries entitled to take hereunder" this Section includes the donors, thus making provision only for the death of the named beneficiaries, their children, and the donors prior to the termination of the trust, and making no provision for the death of the beneficiaries and their children survived by one or both of the donors. Although the term "beneficiaries" is nowhere defined in the trust instrument, the donors do, in fact, share as beneficiaries under the trust through their reservation of an interest in income. In addition, the trust instrument clearly indicates their status as beneficiaries by twice speaking of "any such original beneficiary (except the donors).. . . ." Had not the parties to the trust instrument considered the donors as beneficiaries,

the parenthetical exception of the donors from the scope of such term obviously would have been unnecessary. Moreover, in the event of the contingency contained in Section XVI, the trust terminates and the property goes to the "respective lawful heirs of each of the donors." Since it is a familiar maxim that no living person possesses heirs, this Section clearly includes the deaths of the donors in the contingency therein stated.

Consequently, there is no provision in the instrument for the disposition of the trust property should either of the donors survive those named beneficiaries and their children who have not contested the trust. In the event of such a contingency, this undisposed of portion would revert back to the donors, Restatement of Trusts, Section 430, and, it being impossible to accomplish the purposes of the trust and there being no additional persons who could possibly have an interest in the trust, the donors would take by reversion an absolute and unencumbered interest in the trust property, Restatement of Trusts, Sections 335, 339, and would regain the whole of such property.

In the case of In re Prange's Will, (1930) 201 Wis. 636, 231 N. W. 271, the court said:

"The test to be applied, in order to determine whether or not a transfer was intended to take effect in possession or enjoyment at or after such death, is whether the donor reserved to himself any beneficial or economic interest, or any right thereafter to otherwise dispose of any such interest in the corpus of the trust, for the benefit of himself or otherwise. . . ."

We feel that the Sumpter trust falls well within such a test, and you are respectfully advised that such trust was, in the language of Article 7117, "made or intended to take effect in possession or enjoyment after the death of the grantor or donor."

This conclusion would automatically determine the taxability of the trust were it not for a contention made by the attorney for the estate. In 1921, the date of creation of the trust, inheritance taxes were levied only upon strangers and collateral descendants of the grantor, with lineal descendants being expressly exempted from such taxes. 13 Gammel's

Laws 496. Since a portion of the income and corpus of the trust is to go to a daughter of the donors, it is contended that any tax imposed upon such an interest would be retroactive and unconstitutional. With this contention we cannot agree.

As has been shown above, our tax is upon the right to receive or succeed to the possession or enjoyment or property transferred in a mode made or intended to take effect after the death of the grantor. As was said in the Bethea case, supra:

"It is not a question of when the beneficial interest is created, but the tax is imposed upon the right to receive in possession or enjoyment after the death of grantor or settlor. In consequence, a grantor or settlor may create an irrevocable trust during his lifetime, still if he postpones the right of possession or enjoyment of the beneficiary until after the grantor's death, the property or any interest therein is subject to the inheritance or succession tax at or after his death. Under our statute, where either 'possession' or 'enjoyment' is made contingent upon the death of grantor or settlor of all or any part of the trust estate, such transfer is taxable."

That the "possession" and "enjoyment" which are determinative of this question refer to the economic benefits of the property rather than to the theoretical vesting of title is revealed by the host of cases, see 49 A. L. R. 874, 878, 67 A. L. R. 1250, 100 A. L. R. 1246, 1247, in which a grantor has reserved a life estate in property transferred by way of remainder to a grantee. In these cases the grantee acquires immediately an indefeasibly vested remainder under theoretical common law rules, and, were the date of vesting the crucial date, his tax liability should be determined at that time. Yet the cases are virtually unanimous in holding that the date when the grantee succeeds to the actual possession and enjoyment, rather than the date when he acquires a vested title, is crucial. Judge Blair echoed the same idea in the Bethea case by rejecting the date of the creation of the interest and placing emphasis on the date when actual possession and enjoyment are acquired. In Saltonstall v. Saltonstall, 276 U.S. 260, 271 (1927), the then Mr. Justice Stone, speaking for a unanimous court, expressed the matter thus:

"So long as the privilege of succession has not been fully exercised it may be reached by the tax. (Citing cases) And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices." (Emphasis added)

In the instant trust the beneficiaries undoubtedly acquired an interest which possessed a certain degree of vestedness in 1921, yet it was not until 1942, when both donors were deceased, that they came to enjoy any of the economic benefits of the property. Since the tax is, as we have seen, solely upon the privilege of receiving such benefits, we can only conclude that tax liability of the trust is to be determined in 1942, a date when both lineal and collateral descendants were subject to the tax. No question of retroactivity is involved for the taxable event occurred subsequent to the adoption of the applicable statute; neither our constitutional prohibition against retroactive laws nor the due process clauses of our State and Federal Constitutions is violated. Saltonstall v. Saltonstall, supra.

In reaching this conclusion, we are not unaware of the case of Coolidge v. Long, 282 U. S. 582 (1931), in which the Supreme Court of the United States held invalid an attempt by the State of Massachusetts to employ an inheritance tax statute enacted in 1921 to tax the receipt by the beneficiaries in 1925 of the actual possession and enjoyment of property the beneficial interests to which were created by a trust executed in 1907. If we accepted this case, we would be forced to conclude that the interest in the Sumpter trust which passed to a lineal descendant of the donors would not be taxable. However, we can accept neither the reasoning of the Coolidge case nor its present authoritativeness. The decision in the Coolidge case found the court divided five to four with Justices Holmes, Brandeis, and Stone joining Mr. Justice Roberts in a persuasive dissent based upon the premises which we have enunciated above. Although the Coolidge case has never been expressly overruled, the Supreme Court has, in a later case (Welch v. Henry, 305 U. S. 134 (1938)), held that retroactivity of a tax alone does not make for unconstitutionality, and it is noteworthy that in this case the

Court, speaking through the then Mr. Justice Stone, in distinguishing the Coolidge case from the situation there involved, carefully refrained from approving such case and spoke instead, at page 147, of the facts in that case being "thought to be so arbitrary and oppressive as to be a denial of due process." (Emphasis added) We are fully aware of the gravity of disregarding any decision of the Supreme Court prior to its formal overruling, yet we cannot but feel that the dissenting opinion in the Coolidge case is more in harmony with the interpretations which have been placed upon our inheritance tax statute and is more representative of the recent tax decisions of that court than is the opinion of the majority.

Consequently, the question contained in your opinion request is answered in the affirmative, and you are respectfully advised that Mrs. Sumpter's entire one-half community interest in the Sumpter trust should be included as a portion of her estate for inheritance tax purposes.

We are returning herewith the file which accompanied your opinion request.

APPROVED MAY 5, 194.

FIRST ASSISTANT
ATTORNEY GENERAL

RDM:db

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

R. Dean Moorhead
Assistant